**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **DOROTHY DUNBAR** | : | **DOCKET NO. 01-2016** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is not supported by substantial evidence in the record. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

Dorothy Dunbar filed the first of several applications for Supplemental Security Income on June 6, 1997. The claim was denied initially, and not further appealed. (Tr. 38). On March 3, 1998, and June 17, 1998, respectively, Dunbar filed applications for Supplemental Security Income and Disability Insurance Benefits. (Tr. 38). The claims were denied by an Administrative Law Judge ("ALJ") on February 24, 1999. (Tr. 38-46). The Appeals Council declined review on March 2, 1999. (Tr. 9). There is no evidence that these applications were further appealed.

Instead, on April 18, 2000, Dunbar protectively filed the instant application for Disability

Insurance Benefits, Disabled Widow's Benefits, and Supplemental Security Income payments. (Tr. 92-95). She alleged an inability to work since April 21, 1998, due to high blood pressure and diabetes (Tr. 92, 147). The claims were denied initially. (Tr. 51, 65-69). Thereafter, Dunbar requested, and received a June 21, 2001, hearing before an ALJ. (Tr. 105-126). In an August 2, 2001, written decision, the ALJ determined that Dunbar was not disabled under the Act, finding at Step Four of the sequential evaluation process that she retained the residual functional capacity to perform past relevant work. (Tr. 55-61). On October 2, 2001, Dunbar sought review before this court. Eight months later on June 5, 2002, the Commissioner filed an Unopposed Motion for Remand pursuant to the sixth sentence of 42 U.S.C. § 405(g). (doc. # 8). The motion was granted on June 10, 2002. (Doc. # 9).

On August 6, 2002, the Appeals Council vacated the prior decision of the Commissioner, and remanded the case to an ALJ with instructions to update the medical records and to obtain a consultative internist examination with a medical source statement. (Tr.83-84). Accordingly, a hearing was held before an ALJ on May 19, 2003. (Tr. 262-289).[1] In an October 28, 2003, written decision, the ALJ issued a partially favorable decision. (Tr. 9-18). He found that Dunbar was disabled beginning on January 16, 2003, through at least the date of the decision. *Id*. However, he determined that for the preceding period through January 15, 2003, Dunbar was not disabled under the Act, because she retained the residual functional capacity to perform past relevant work. *Id*.[2]

---

[1] Meanwhile, on February 4, 2003, Dunbar filed new applications for benefits (Tr. 9). These application were successful at the initial level, and benefits were awarded as of January 16, 2003. *Id*.

[2] Dunbar's application for Widow's Insurance Benefits was denied in its entirety because she did not establish disability within the prescribed period that expired on December 31, 2001. (Tr. 10, 17).

Dunbar appealed the adverse decision to the Appeals Council. However, on November 9, 2004, the Appeals Council denied Dunbar's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 5A-5B). On January 24, 2005, the Commissioner filed the administrative record with the Clerk of Court, and the instant case was reopened.

Dunbar now seeks to have this court review the denial of benefits. She alleges the following errors:

(1) the Commissioner's determination that Dunbar did not have a severe mental impairment is not supported by substantial evidence;

(2) the Commissioner's inference of the onset date of disability was not based on an informed judgment;

(3) the Commissioner's residual functional capacity assessment is not supported by substantial evidence; and

(4) the Commissioner's Step Four determination is not supported by substantial evidence.

## **STANDARD OF REVIEW**

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1983). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented him from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW AND ANALYSIS

The secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit him to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work. If the Secretary meets this burden, then the claimant must then prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

**Issue 1**:

The ALJ found at Step Two of the sequential evaluation process that Dunbar suffered the

following severe impairments: diabetes mellitus and hypertension. (Tr. 13).[3] However, he concluded that Dunbar did not have a severe mental impairment. Plaintiff challenges the latter finding.

In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000). Moreover, an impairment is "not severe" if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1521; *see*, *Waters v. Barnhart*, 276 F.3d 716 (5th Cir. 2002).

On May 31, 2001, Dunbar was seen by Jerry L. Whiteman, Ph.D., for a psychological evaluation. (Tr. 231-232). Upon administration of the Wechsler Adult Intelligence Scale-III, Dunbar obtained a full scale IQ of 58; a score that reflected mild mental retardation. *Id*. Her verbal and performance I.Q. scores were 62 and 60, respectively. *Id*. Her comprehension, judgment, short term memory, and concentration skills were all deficient. *Id*. Her pace and persistence on challenging cognitive tasks were limited, as were her capacities to manage stress and to manage her own funds. *Id*. Whiteman diagnosed mild mental retardation. *Id*.

The ALJ discounted the I.Q. test results obtained by Dr. Whiteman because they did not correspond with plaintiff's activities of daily living. (Tr. 12).[4] Specifically, Dunbar was able to

---

[3] The impairments were not severe enough to meet or medically equal any one of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. (Tr. 13, 16).

[4] The ALJ may make factual determinations regarding the validity of I.Q. tests. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citations omitted).

live alone, take care of herself, shop, count change and handle a savings account. Dunbar also drove, and had a driver's license. (Tr. 159). We find that there is substantial evidence to support the ALJ's determination that the I.Q. tests were invalid. Absent valid I.Q. tests, plaintiff failed to meet her burden of proving disability due to mental retardation. *Muse, supra*.

While plaintiff may not have established disability due to mental retardation, it remains questionable whether she had another medically determinable impairment that could have caused the mental limitations on work-related activities identified by Dr. Whiteman.[5] This issue can be addressed upon remand. *See*, discussion, *infra*.

**Issues 2-3**:

The ALJ determined that from February 25, 1999,[6] through January 15, 2003, Dunbar retained the residual functional capacity to lift 50 pounds occasionally and 25 pounds frequently (*i.e.* work at the medium exertional level). (Tr. 16-17).[7] She could stand or walk up to six hours in

---

[5] (*See*, Tr. 233-234). Dr. Whiteman indicated that his assessment was supported by the medical findings of mild mental retardation and diabetes/ high blood pressure. *Id*.

[6] February 25, 1999, is the day after the final decision denying plaintiff's previous application. (*See*, Tr. 38-46). The Commissioner found no grounds to reopen or reconsider the prior denial. (Tr. 16).

[7] Medium work is defined and explained by Social Security Ruling 83-10. It provides:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

an eight hour day, and retained the ability to frequently stoop and crouch. *Id*. She was limited from working at heights, and could not use dangerous machinery. *Id*. However, as of January 16, 2003, the ALJ found that Dunbar was limited to essentially light work, which prevented her from returning to her past work as a housekeeper as generally performed in the national economy. (Tr. 15).[8]

Plaintiff contends that because her hypertension is a slowly progressive impairment, the ALJ was required to consult a medical advisor to establish her disability onset date. *Spellman v. Shalala*, 1 F.3d 357 (5th Cir. 1993); Social Security Ruling 83-20. However, if the onset date is not ambiguous, or if there is a complete medical chronology, then a medical advisor is not required. *See, Spellman, supra*.[9] Here, plaintiff sustained a stroke in January 2003 which resulted in an additional severe impairment. (Tr. 13). The stroke clearly demarcated the boundary between non-

---

> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10

[8] Medical-Vocational Rule 202.01 directed a finding that as of January 16, 2003, Dunbar was "disabled." (Tr. 17).

[9] The disability onset date is ambiguous when it is unclear when the impairment first restricts the functional capacity. *Id*.

7

disability and disability, and enabled the ALJ to determine when plaintiff's condition restricted her functional capacity.[10]

We do not find the same support, however, for the ALJ's residual functional capacity determination for the period until January 15, 2003. When this matter was before the court previously, the Commissioner agreed that remand was required to update the medical record to obtain a consultative internist examination and medical source statement. (*See*, June 5, 2002, Unopposed Motion to Remand, [doc. #8]). Indeed, upon remand the Appeals Council specifically directed the ALJ to obtain a consultative internist examination and medical source statement. (Tr. 83-84). Yet, the ALJ did not do so. Thus, this case returned here some three years later in no better position than it was in 2002 when the Commissioner acknowledged that further development was required. The instant record remains devoid of any consultative internist examination or medical source statement of Dunbar's residual functional capacity during the relevant period. Instead, the ALJ blindly determined Dunbar's residual functional capacity. (*See*, Tr. 14). Yet, without the requisite medical assessment or other corroborating evidence, the ALJ's residual functional capacity determination (for the period until January 15, 2003) is not supported by substantial evidence. *See, Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004)(unpublished)(in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).[11]

---

[10] Contrast *Spellman*, where the Appeals Council arbitrarily selected the onset date. *Spellman, supra*.

[11] Unpublished Fifth Circuit opinions issued on, or after January 1, 1996, are ordinarily not precedent. FRAP 47.5.4. However, they are persuasive. *Id*. Moreover, the fact that a case remains unpublished reflects the panel's belief that the decision simply reaffirmed a well-settled

8

Because the foundation for the ALJ's Step Four determination was premised upon a residual functional capacity which is not supported by substantial evidence, we necessarily find that the ALJ's ultimate conclusion that plaintiff is not disabled is likewise not supported by substantial evidence.[12] For the foregoing reasons,

IT IS RECOMMENDED that this matter be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 17th day of August, 2005.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

principle of law. *See*, FRAP 47.5.1.

[12] Accordingly, we need not reach plaintiff's remaining assignment(s) of error.